UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| SULLIVAN CITTADINO,<br><br>            Plaintiff,<br><br>     v.<br><br>BRANDSAFWAY SERVICES, LLC; BRAND INDUSTRIAL SERVICES, INC.; BRANDSAFWAY INDUSTRIES, LLC; SAFWAY GROUP HOLDING, LLC; and DOES 1 through 20, inclusive,<br><br>            Defendants. | No. 2:23-cv-00322 WBS JDP<br><br>MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION TO DISMISS |

----oo0oo----

Plaintiff Sullivan Cittadino brought this action in Solano County Superior Court against BrandSafway Services, LLC; Brand Industrial Services, Inc.; BrandSafway Industries, LLC; and Safway Group Holding, LLC (collectively "defendants"), alleging breach of an implied employment contract, and violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. (Compl. (Docket No. 1-1).) Defendants removed the

1

action to this court based on diversity of citizenship. (Docket No. 1.) Defendants now move to dismiss the complaint.[1] (Docket No. 6.)

I. Factual Background[2]

Plaintiff was an employee of defendants, which provide construction-related services, from 1992 to 2020. (See Compl. ¶¶ 12, 16.) During his 28 years of employment, plaintiff received multiple promotions and consistent annual raises, in addition to performance-based bonuses, retention bonuses, and stock options. (See id. ¶¶ 13-15.) In 2004, plaintiff was promoted to Branch Manager of defendants' Benicia, California branch. (Id.) In 2012, he was promoted to Northwest Regional Vice President. (Id.)

In July 2020, defendants notified plaintiff that he was going to be terminated in October 2020, but that they would try to find him a different position in the company beginning in 2021. (Id. ¶ 17.) No reason was given for the termination. (Id.) On July 30, 2020, defendants presented plaintiff with a proposed severance agreement that did not fully compensate plaintiff for his paid time off ("PTO") and contained a two-year noncompete clause. (Id. ¶ 21.) After plaintiff notified defendants that he was owed higher PTO compensation than the agreement provided for, defendants removed several provisions from the agreement that were favorable to plaintiff. (Id.)

---

[1] Plaintiff also moved to remand the case. The court addressed that motion in a separate order. (See Docket No. 19.)

[2] All facts recited herein are as alleged in the Complaint unless otherwise noted.

2

1  Defendants also tried to pressure plaintiff into accepting the
2  lesser PTO compensation by falsely accusing plaintiff of "taking
3  documents" during his employment, and they stopped trying to find
4  a new position for plaintiff.  (Id.)
5          Plaintiff's employment ended on December 31, 2020.
6  (Id.)  The parties later reached a confidential settlement
7  concerning the PTO payments following plaintiff's filing of a
8  complaint with the California Employment Development Department.
9  (Id. ¶ 22.)  Defendants required plaintiff to exercise his stock
10 options with less favorable conditions than other terminated
11 employees; "overdr[ew]" into plaintiff's 401(k), which was later
12 corrected; mismanaged plaintiff's COBRA benefits; and failed to
13 resolve a prior worker's compensation claim submitted during
14 plaintiff's employment.  (Id. ¶¶ 23-24.)
15         Defendants are required to maintain a license from the
16 California Contractors State Licensing Board.  (Id. ¶ 16.)  One
17 of the licensure requirements is to designate a Responsible
18 Managing Employee, who at the time of reporting must be working
19 the lesser of 32 hours per week or 80% of the total hours per
20 week that the business is operational.  (Id.)  At the time of his
21 termination, plaintiff was the designated Responsible Managing
22 Employee.  (Id. ¶¶ 16, 31.)  Defendants continued to identify
23 plaintiff as the Responsible Managing Employee until February 18,
24 2021.  (Id. ¶ 34.)
25 II.  Legal Standard
26         Federal Rule of Civil Procedure 12(b)(6) allows for
27 dismissal when a complaint fails to state a claim upon which
28 relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  "A Rule

3

12(b)(6) motion tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  The inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the complaint has alleged "sufficient facts . . . to support a cognizable legal theory," id., and thereby stated "a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Courts are not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); see Twombly, 550 U.S. at 555.  Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

III. Discussion

    A.   Breach of Implied Employment Contract

Defendants first move to dismiss plaintiff's breach of implied employment contract claim, arguing that plaintiff has not properly alleged the existence of any employment contract.  Under California law, there is a strong statutory presumption of "at will" employment.  See Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 335 (Cal. 2000) (citing Cal. Lab. Code § 2922).  "An at-will employment may be ended by either party at any time without cause, for any or no reason . . . ." Id. (internal quotation

4

marks omitted).  The at-will presumption can be overridden by contractual agreement between employer and employee, whether express or implied.  Id. at 336.

In determining whether an implied employment contract exists, courts examine "'the totality of the circumstances'" and look to a number of factors, including "'the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged.'"  Id. at 336-37 (quoting Foley v. Interactive Data Corp, 47 Cal. 3d 654, 680-81 (Cal. 1988)).  However, any "vague combination of Foley factors" does not necessarily establish that an employee had a right to be discharged only for good cause.  Id. at 337.  "On the contrary, 'courts seek to enforce the actual understanding' of the parties to an employment agreement."  Id. (quoting Foley, 47 Cal. 3d at 681).  "Where there is no express agreement, the issue is whether other evidence of the parties' conduct has a tendency in reason to demonstrate the existence of an actual mutual understanding on particular terms and conditions of employment."  Id. at 337 (internal quotation marks and citation omitted, emphasis in original).

Rather than identifying any allegations from the complaint that support the breach of contract claim or citing relevant case law, plaintiff's opposition merely identifies a list of the Foley factors discussed above, as delineated in the California pattern jury instructions.  See Cal. Civ. Jury Instr. (CACI) No. 2403.  The court is therefore left to scrutinize the

complaint and attempt to discern which allegations are pled in support of plaintiff's implied contract claim.

The complaint provides a conclusory statement that "[t]hrough [defendants'] conduct and employment practices . . ., and on the facts outlined herein, an implied employment contract was created . . . whereby the [d]efendants . . . agreed not to terminate plaintiff except solely for good cause." (Compl. ¶ 27.) The only thing offered in the complaint in addition to this bare legal conclusion is an overview of plaintiff's long and successful employment history and the various forms of compensation he received in recognition of his strong performance. While facts of this nature can be relevant, they alone cannot establish the existence of an implied contract. See Guz, 24 Cal. 4th at 341-42 ("longevity, raises[,] and promotions are their own rewards for the employee's continuing valued service; they do not, in and of themselves, additionally constitute a contractual guarantee of future employment security," because "[a] rule granting such contract rights on the basis of successful longevity alone would discourage the retention and promotion of employees"); Neung Kang v. PB Fasteners, 268 F. App'x 545, 547 (9th Cir. 2008) (the plaintiff's "thirty years of employment with [defendant], over which time he allegedly received merit raises, promotions, and highly favorable performance reviews, does not, standing alone, create an implied-in fact contract").

Plaintiff also alleges that, following notification that plaintiff would be terminated, defendants stated that they "would be attempting to find a different position" to place him

6

1  in.  (Compl. ¶ 17.)  It is not clear -- and plaintiff has made no
2  attempt to explain -- how such a statement, made <u>after</u> defendants
3  notified plaintiff that he would be terminated without cause, is
4  relevant in determining the existence of an implied contract with
5  for-cause protections.
6       The complaint does not seem to contain any other
7  allegations that would tend to establish an implied employment
8  contract, and plaintiff's opposition is devoid of any relevant
9  authority or even bare argument that would suggest otherwise.
10 Accordingly, the court will dismiss plaintiff's first claim for
11 breach of an implied employment contract.
12      B.   <u>Statutory Standing Under Unfair Competition Law</u>
13           As the basis of his UCL claim, plaintiff alleges that,
14 following his termination, defendants continued to falsely
15 represent plaintiff as their Responsible Managing Employee to the
16 California Contractors State Licensing Board in order to comply
17 with the board's licensing requirements.  (<u>See</u> Compl. ¶¶ 31-34.)
18           California's Unfair Competition Law ("UCL"), Cal. Bus.
19 & Prof. Code § 17200, prohibits unfair competition, including any
20 unlawful, unfair, or fraudulent business act.  An individual
21 suing under the UCL must have "suffered injury in fact" and "lost
22 money or property."  Cal. Bus. & Prof. Code § 17204.  "The plain
23 import of this is that a plaintiff . . . must demonstrate some
24 form of economic injury."  <u>Kwikset Corp. v. Superior Ct.</u>, 51 Cal.
25 4th 310, 323 (Cal. 2011).  Being "deprived of money or property
26 to which he or she has a cognizable claim" constitutes a
27 sufficient economic injury.  <u>Id.</u>
28           Even if defendants violated the Responsible Managing

7

Employee licensing requirement, it does not necessarily follow that plaintiff is owed compensation.  Plaintiff has not cited -- nor has the court found -- <u>any</u> authority suggesting that plaintiff has a cognizable claim to any payment from defendants for falsely representing him as the Responsible Managing Employee to the licensing board.

Plaintiff therefore has not alleged sufficient facts to establish that he suffered an economic injury conferring statutory standing under the UCL.  Accordingly, the court will dismiss plaintiff's second claim[3] for violation of the UCL.

IT IS THEREFORE ORDERED that defendants' motion to dismiss (Docket No. 6) be, and the same hereby is, GRANTED.  Plaintiff has twenty days from the date of this Order to file an amended complaint, if he can do so consistent with this Order.

Dated:  May 12, 2023

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[3]    The complaint erroneously refers to the UCL claim as the "third" claim.  (<u>See</u> Compl. at 8.)